[Crim. No. 23226. Second Dist., Div. One. Nov. 28, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL JIMENEZ JUAREZ, Defendant and Appellant.

**COUNSEL**

Norman A. Chernin, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Norman H. Sokolow and James H. Kline, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**THOMPSON, J.**—This appeal from a judgment of conviction of possession of secobarbital entered on a plea of guilty, following the denial of a motion to suppress evidence pursuant to Penal Code section 1538.5, raises the issue of propriety of police conduct in temporarily detaining appellant for investigation and in initiating a cursory frisk for weapons. We conclude that implied findings of the trial court sustaining the validity of the detention and frisk are supported by substantial evidence and that therefore the judgment must be affirmed.

On October 15, 1972, Sergeant John Georgino of the Monterey Park Police Department was on patrol in a marked police car. He was alone in the vehicle. At 2:35 p.m., he received notice on the police radio that a burglary had occurred in the 2000 block of Atlantic Boulevard in which the loot was cash and a watch. Georgino proceeded to the general area to investigate for suspects. At 2:45 p.m., he saw appellant walking westbound on Floral Boulevard near Findlay approximately five blocks from the scene of the burglary. Appellant twice looked over his shoulder at the police car. He was wearing a short-sleeved shirt and dark pants, had a jacket slung over his shoulder, and was the only person walking in the neighborhood.

Georgino pulled his car to the left side of the street near the curb and the sidewalk where appellant was walking. While both the vehicle and appellant were still in motion, Georgino asked appellant if he lived in the area. Appellant stated he did not and continued walking. Georgino asked appellant where he was "coming from" and received a reply that appellant had been at a friend's house on Garfield Avenue about a mile and a quarter away. When asked where he lived, appellant stated, "Rosemead." Noting that appellant was walking in a direction opposite from that which would take him to Rosemead, Georgino stopped the police car and approached appellant. He mentioned to appellant that he appeared to be walking in the wrong direction, and appellant replied that he was on his way to catch a bus on Atlantic Avenue. Georgino asked appellant for identification. Appellant produced a receipt from his back pocket which bore his name. As appellant produced the receipt, Georgino noticed a bulge in his left front pocket approximately one inch by one inch in size. He also saw that appellant had puncture wounds on his arms.

Georgino reached for appellant with the intention of patting him down for weapons. As he did so, appellant reached in his pocket and turned away. Georgino grabbed appellant's wrist. Appellant pulled his hand from his pocket, and in an ensuing struggle, both men fell. Red capsules dropped from appellant's pocket and appellant placed his hand to his mouth. Sprayed with Mace by Georgino, appellant spit out other red capsules. Appellant was arrested. On analysis, the capsules proved to be secobarbital, a restricted dangerous drug.

Charged with possession of the drug in violation of Health and Safety Code section 11910 (now Health & Saf. Code, § 11377), appellant moved to suppress evidence of the capsules found on the ground, contending that they were the product of unlawful police conduct. The motion was denied.

A plea bargain was struck by which appellant entered his guilty plea in return for the court's determining his offense to be a misdemeanor and releasing him on probation with no time in confinement beyond that served prior to trial. On this appeal from the ensuing judgment, appellant contends: (1) he was illegally detained; and (2) the capsules were discarded by him in response to an unlawful police effort to frisk him.

■ The record in the case at bench supports the implied finding of the trial court that there were circumstances, short of probable cause for arrest, which justified the temporary detention of appellant for investigation. We must view that record in its entirety, drawing all inferences from it that the trial court was entitled to draw in determining the dynamics of the situation in which detention occurred. No illegality taints the initial conduct of Sergeant Georgino in pulling his police car alongside appellant to ask him questions as he was walking. Such a routine inquiry of a citizen is not a detention in the sense that the term is used as a limitation on police activity. (*Sibron* v. *New York,* 392 U.S. 40, 64 [20 L.Ed.2d 917, 935, 88 S.Ct. 1889]; *People* v. *Blackmon,* 276 Cal.App.2d 346, 348-349 [80 Cal.Rptr. 862].) Appellant's response to Georgino's initial questions supplied reasonable cause to detain him further for interrogation. ■ Probable cause to detain for investigation exists where: "First, there [is] a rational suspicion by the peace officer that some activity out of the ordinary is or has taken place. Next, some indication to connect the person under suspicion with the unusual activity. Finally, some suggestion that the activity is related to crime." (*People* v. *Henze,* 253 Cal.App.2d 986, 988 [61 Cal.Rptr. 545], cited with approval in *Irwin* v. *Superior Court,* 1 Cal.3d 423, 427 [82 Cal.Rptr. 484, 462 P.2d 12].) ■ Here, the record supports the presence of the first and third requirements. The police radio message established cause to believe that a burglary had been committed in the general area where appellant was walking.[1] Here, also, the record contains substantial evidence from which the trial court could properly draw the inference that Georgino reasonably suspected that appellant was connected with the crime. Appellant was the only pedestrian in the vicinity of a burglary that had occured 10 minutes before he was seen by Sergeant Georgino. He twice looked back at the marked police car. Appellant did not reside in the area and stated that he had walked 1¼ miles from a friend's house in a direction opposite to his own home. Presence in the general area of a recent burglary accompanied by an explanation of doubtful veracity constitutes cause to

---

[1]No issue is raised concerning the source of information broadcast by the police. The radio broadcast was, however, sufficient to sustain the detention. (*Adams* v. *Williams,* 407 U.S. 143 [32 L.Ed.2d 612, 92 S.Ct. 1921].)

suspect the person's connection with the crime sufficient to justify his detention for further investigation. (*People* v. *Nickles,* 9 Cal.App.3d 986, 991 [88 Cal.Rptr. 763]; see also *People* v. *Mejia,* 272 Cal.App.2d 486 [77 Cal.Rptr. 344].) There is evidence of those facts in the record of the case at bench.

Seizing upon language in *Irwin* v. *Superior Court, supra,* 1 Cal.3d 423, 426, appellant contends that his actions were not reasonable cause to detain for investigation because "the circumstances [were not] such as to distinguish the activity . . . from that of any other citizen . . . ." The contention fails because action of a suspect must be viewed in the context of the surrounding circumstances and not in isolation. (See *People* v. *Superior Court (Acosta)* 20 Cal.App.3d 1085, 1089-1091 [98 Cal.Rptr. 161].) Running down a street is in itself indistinguishable from the action of a citizen engaged in a program of physical fitness. Viewed in context of immediately preceding gunshots, it is highly suspicious. Here the surrounding circumstances of the immediately preceding burglary and appellant's apparently false explanation of his presence in the area distinguish his activity of walking down the street from that of the ordinary citizen.

Thus substantial evidence supports the conclusion that Sergeant Georgino properly detained appellant for investigation. ■ The record also supports the proposition that Georgino had reasonable cause to conduct a cursory search for weapons incident to the detention. ■ The governing test is supplied by the United States Supreme Court. ". . . [W]here a police officer . . . conclude[s] in light of his experience . . . that the persons with whom he is dealing may be armed and presently dangerous . . . he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." (*Terry* v. *Ohio,* 392 U.S. 1, 30 [20 L.Ed.2d 889, 911, 88 S.Ct. 1868].) ■ Here Sergeant Georgino, before he attempted to frisk appellant, was aware that appellant was a logical suspect in a recent burglary, and the puncture marks on his arms gave every indication that appellant was a narcotics addict. Georgino was entitled to conclude from those facts, and in light of his experience, that appellant might be armed and dangerous.[2]

Appellant argues that the testimony establishes that Sergeant Georgino

---

[2]We judicially notice the routine practice of our Supreme Court which requires a pat-down search of all persons, including lawyers, who enter its courtroom. The risk that a suspect may be armed in the circumstances of the case at bench is certainly greater than the risk that a litigant or lawyer entering the Supreme Court courtroom may be.

had no belief that appellant was actually armed. That argument ignores the *Terry* test which requires only reasonable cause to believe that the suspect may be armed and not that he in fact is. We note also that the case at bench is distinguishable from cases in which the frisking officer admits that the cursory search is pursuant to a practice in which he uniformly engages before questioning any suspect. (Cf. *People* v. *Adam,* 1 Cal.App.3d 486 [81 Cal.Rptr. 738]; *People* v. *Hubbard,* 9 Cal.App.3d 827 [88 Cal.Rptr. 411].) Sergeant Georgino testified that he was always in fear of harm when questioning a detained suspect but not that he always and without articulable reason allayed that fear by a frisk.

■ Since no police misconduct caused appellant to react by pulling the secobarbital capsules from his pocket, their subsequent discovery in plain sight must be viewed as legal. Assuming without deciding that Sergeant Georgino's use of Mace to cause appellant to disgorge the capsules which he had placed in his mouth was improper use of excessive force, no prejudicial error occurred on that account since the capsules which appellant failed to place in his mouth and which were simply dropped to the ground constitute legally obtained evidence supporting the judgment. Thus we conclude that the trial court did not prejudicially err in denying appellant's motion to suppress evidence.

The judgment (order) is affirmed.

Lillie, Acting P. J., and Hanson, J., concurred.